UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CHRISTINE J. CASIANO, as Administrator
of the Estate of Raymond Casiano, Deceased,
and CHRISTINE J. CASIANO, Individually,

                Plaintiff,

      -against-

COUNTY OF NASSAU, *et al.*,

              Defendants.
--------------------------------------------------------X

**ORDER**
16-cv-1194 (SJF)(ARL)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 3 0 2017 ★

LONG ISLAND OFFICE

**FEUERSTEIN, District Judge:**

     Plaintiff Christine J. Casiano, as Administrator of the Estate of Raymond Casiano,

Deceased, and Christine J. Casiano, Individually ("Plaintiff" or "Casiano") commenced this action

seeking redress pursuant to, *inter alia*: (i) 42 U.S.C. § 1983 ("Section 1983"); (ii) the Americans

With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and (iii) the Rehabilitation Act

of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq. See* Docket Entry ("DE") [1]. On

November 28, 2016, Defendants Jordan Laguio, Cherif Makram, Jon Miller, Brandon Smith, and

Doreen Mary Smith (collectively, the "State Defendants") filed a motion pursuant to Fed. R. Civ.

P. 12(b)(1) and 12(b)(6), seeking dismissal of Plaintiff's claims and Defendant County of Nassau's

(the "County") cross-claims, which the Court referred to Magistrate Judge Arlene R. Lindsay for

a Report and Recommendation as to whether the motion should be granted. DE [40]. In an August

8, 2017 Report and Recommendation (the "Report"), Magistrate Judge Lindsay recommended that

the State Defendants' motion to dismiss: (i) Plaintiff's claims against them be granted with leave

to replead; and (ii) the County's cross-claims against them be denied with leave to renew. DE

[60]. On August 22, 2017, Plaintiff filed a timely objection to Magistrate Judge Lindsay's Report,

to which the State Defendants replied on September 1, 2017. DE [61], [62]. The State Defendants did not object to Magistrate Judge Lindsay's recommendation that their motion to dismiss the County's cross-claims against them be denied. For the reasons set forth herein, Magistrate Judge Lindsay's Report is adopted in its entirety.

## I.  LEGAL STANDARD

### A. Report and Recommendation

Pursuant to Fed. R. Civ. P. 72, a magistrate judge may conduct proceedings on dispositive pretrial matters without the consent of the parties. *See* Fed. R. Civ. P. 72(b); *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002) ("A district court may refer, without the parties' consent, both nondispositive and dispositive motions to a magistrate judge for decision or recommendation, respectively."). In reviewing a magistrate judge's report and recommendation, the district court may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations. *DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Any portion of a report and recommendation on a dispositive matter to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "[o]bjections to a report must be specific and clearly aimed at particular findings in the magistrate's proposal." *Frankel v. City of New York*, No. 06-CV-5450, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009). Therefore, "[w]hen a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Id.* Similarly, where there are no specific written objections to a magistrate judge's report and recommendation, the district court may accept the findings contained therein as long as the factual and legal bases supporting the findings are not clearly erroneous. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).

2

**B. Motion to Dismiss Standard**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citations omitted); *see also Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

**II.    OBJECTIONS**

In her objection to the Report, Plaintiff argues that Magistrate Judge Lindsay erred in recommending that Plaintiff's claims arising under Section 1983 be dismissed as to both: (i)

Defendant Superintendent Brandon Smith ("Superintendent Smith"); and (ii) Defendants Laguio, Makram, Miller, and Doreen Mary Smith (collectively, the "Physician Defendants"). *See* Plaintiff's Objections to Magistrate Judge's Report and Recommendation ("Pl.'s Obj."), DE [61], at 1-2. Plaintiff does not object to the Report insofar as Magistrate Judge Lindsay recommends that the Court dismiss Plaintiff's claims arising under the ADA and Rehabilitation Act. *Id.* at 2. Applying the standards outlined above, and for the reasons set forth herein, Magistrate Judge Lindsay's Report is adopted in its entirety, and the State Defendants' motion to dismiss Plaintiff's claims is granted with leave to replead.

### A. Section 1983 Claim

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 itself does not create substantive rights; rather, "it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) ("[Section 1983] merely provides a method for vindicating federal rights elsewhere conferred . . . .") (internal quotation omitted). Therefore, to prevail on a claim arising under Section 1983, a plaintiff must establish: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011).

In the Report, Magistrate Judge Lindsay recommends that: (i) Plaintiff's claims against Superintendent Smith be dismissed for failure to allege his personal involvement in the deprivation

of Raymond Casiano's (the "Decedent") constitutional rights; and (ii) Plaintiff's claims against the Physician Defendants be dismissed for failure to allege that they failed to provide adequate medical care. Report at 5-13. According to Plaintiff, the Complaint contains sufficient factual allegations to support an inference that: (i) Superintendent Smith was personally involved in the alleged deprivation of the Decedent's rights arising under the Eighth Amendment; and (ii) the Physician Defendants acted with deliberate indifference to the Decedent's allegedly serious medical condition. Pl.'s Obj. at 3-5.

### 1. Superintendent Brandon Smith's Personal Involvement

It is well established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (holding that a complaint that fails to allege the individual defendant's personal involvement is "fatally defective on its face"). Therefore, "an individual defendant cannot be held liable for damages simply because he or she holds a supervisory position." *Stamile v. Cty. of Nassau*, No. 10-CV-2632, 2014 WL 1236885, at *3 (E.D.N.Y. Mar. 25, 2014); *see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."). Rather, an individual in a supervisory role may be held liable under Section 1983 in one of the following ways:

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

5

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003); *see also Stancati v. Cty. of Nassau*, No. 14-CV-2694, 2015 WL 1529859, at *3 (E.D.N.Y. Mar. 31, 2015) (holding that a supervisory official who was not personally involved in an alleged constitutional violation may be liable under 42 U.S.C. § 1983 if the official "(1) created a policy or custom under which the unconstitutional practice occurred, or (2) allowed the continuance of such a policy or custom") (internal alterations omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *Bellamy v. Mt. Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("[A] supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.").

In the Complaint, Plaintiff alleges that Superintendent Smith is "the Superintendent or Warden of the Greene Correctional Facility," and that, "among other duties, [Smith] develops, implements, and executes the policies of the Greene Correctional Facility, and manages and overseas [*sic*] all its operations which includes the daily operation of all medical units thereat." Compl. ¶¶ 231-32. Plaintiff further alleges that Smith "is responsible for supervising all corrections officers, medical officers, and other staff located thereat, and he participates in formulating and establishes the practice, customs, and policies at said facility, as well as overseeing those practices, customs, and policies." *Id.* at ¶ 233. According to Plaintiff, "based on the well-known, long and repetitious history of systemic medical and health care deficiencies and failures at the Greene Correctional Facility, Defendant Brandon Smith had actual knowledge of the deficiencies in the health and medical care thereat but did nothing to try and stop and/or remedy the situation." *Id.* at ¶ 421. Accordingly, Plaintiff alleges that Smith was an official who "knew Decedent faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate that risk." *Id.* at ¶ 423. However, even accepting Plaintiff's

allegations as true, they are insufficient to support an inference of Superintendent Smith's personal involvement, as Plaintiff fails to allege that Superintendent Smith directly participated in any such deprivation, and conclusory allegations of a supervisory official's knowledge are insufficient to state a claim arising under Section 1983. *See Hernandez v. Sposato*, No. 12-CV-2530, 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014) (granting the defendant's motion to dismiss where the "plaintiff's complaint [was] devoid of any factual allegations to demonstrate personal involvement by [supervisory officials] regarding the conditions or the adequacy of medical treatment"); *Murphy v. Goord*, 445 F. Supp. 2d 261, 264 (W.D.N.Y. 2006) (holding that, to state a claim against a supervisory official, "a civil rights complaint must still allege facts"); *see also Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

In her first objection to the Report, Plaintiff argues that the Complaint "contains specific allegations, as required, that Mr. Smith was personally involved in Mr. Casiano's constitutional deprivation." Pl.'s Obj. at 3. However, in support of her argument, Plaintiff first points to "concrete allegations that *Mr. Smith's medical staff* . . . ignored Mr. Casiano's obvious medical conditions," *see id.* (emphasis added), which is insufficient to demonstrate a supervisor's personal involvement. *See Silvagnoli v. Fischer*, No. 07-CV-561, 2010 WL 1063849, at *7 (N.D.N.Y. Mar. 1, 2010) (holding that the plaintiff failed to allege personal involvement where the defendant "ha[d] no medical training and delegate[d] decisions regarding inmates' medical care to the medical professionals of his staff"); *Hardy v. Diaz*, No. 08-CV-1352, 2010 WL 1633379, at *7 (N.D.N.Y. Mar. 30, 2010) (holding that a facility superintendent cannot be liable under Section 1983 for failure to supervise the prison medical staff because he lacks the medical training and

7

authority to do so). Plaintiff further argues that she adequately alleges "Mr. Smith's personal involvement insofar as he knew Mr. Casiano faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the risk (i.e., making sure he received treatment) and allowing to exist the practices and customs knowing that they posed an excessive risk to the health and safety of Mr. Casiano." *Id.* However, Plaintiff does not allege facts that support an inference that Superintendent Smith had actual knowledge of the Decedent's specific medical condition, such as allegations that the Decedent directly spoke to Superintendent Smith or that Superintendent Smith received and reviewed grievances from the Decedent. *See, e.g., Booker v. Strack,* No. 97 Civ. 2418, 1999 WL 983878, at *5 (S.D.N.Y. Oct. 29, 1999) (holding that grievances sent to the superintendent may show personal involvement). Therefore, Plaintiff's argument that she adequately alleges Superintendent Smith's personal involvement lacks merit.

Plaintiff further argues that Magistrate Judge Lindsay's Report "does not consider the pertinent case law plaintiff cited in support of the contention that the complaint sufficiently alleges that Mr. Smith's acts constitute direct participation in the violation of Mr. Casiano's rights." Pl.'s Obj. at 4. Even accepting as true that the Report failed to address case law that Plaintiff cited, each of the three (3) cases that Plaintiff cites in her Objection are distinguishable as the plaintiffs pled facts supporting an inference that the supervisory official involved either had personal knowledge of the plaintiff's specific medical condition or was directly responsible for developing illegal policies or customs. *See, e.g., Paul v. Bailey,* No. 09 Civ. 5784, 2013 WL 2896990, at *4 (S.D.N.Y. June 13, 2013) (denying a motion to dismiss a *pro se* plaintiff's complaint where the plaintiff "had a personal conversation" with the warden and informed him of his specific medical conditions); *Hamilton v. Lajoie,* 660 F. Supp. 2d 261, 265 (D. Conn. 2009) (denying the defendant's motion to dismiss the plaintiff's claim of supervisory liability where the plaintiff

8

alleged that the supervisory defendant "was responsible for the policies that led to his injuries at the hands of the correctional officers, and also for the procedures followed by the medical staff following the incident"). In contrast, as discussed above, Plaintiff fails to allege facts that support an inference that Superintendent Smith was actually aware of the Decedent's specific medical condition, such as allegations that the Decedent directly spoke to Superintendent Smith or that Superintendent Smith received and reviewed grievances submitted by the Decedent. *See, e.g., Booker*, 1999 WL 983878, at *5. Therefore, the case law upon which Plaintiff relies is distinguishable and Plaintiff's objections regarding Defendant Brandon Smith are overruled.

### 2. Physician Defendants' Deliberate Indifference

The Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994)). To state a claim for denial of adequate medical care, "[a] plaintiff must show that [the] defendants were deliberately indifferent to his serious medical needs." *McClendon v. Cty. of Nassau*, No. 11-CV-190, 2012 WL 4849144, at *6 (E.D.N.Y. Oct. 11, 2012); *see also Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). Such claims embody both an objective and subjective prong. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Specifically, a claim for deliberate indifference to a serious medical condition under the Eighth and Fourteenth Amendments requires that, "(1) the alleged deprivation must be, in objective terms, sufficiently serious; and (2) the defendant must act with [a] sufficiently culpable state of mind." *Friedland v. Richards*, No. 11-CV-5604, 2013 WL 1091680, at *2 (E.D.N.Y. Mar. 15, 2013) (internal quotations omitted).

To satisfy the objective prong of the deliberate indifference standard, the plaintiff must

allege a deprivation that is "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553); *see also Martinez v. Aycock-West*, --- F. Supp. 3d ---, 2016 WL 407294, at *5 (S.D.N.Y. Feb. 1, 2016) ("Harm that is sufficiently serious is marked by death, degeneration, or extreme pain.") (internal quotation omitted). In evaluating whether the alleged deprivation was objectively serious, the Court must consider: "(1) whether the prison officials acted reasonably in response to the inmate's needs and (2) what harm, if any, the inadequacy in the officials' response to the inmate's need has caused or will likely cause the inmate." *Gaines v. Armor Health Care, Inc.*, No. 12-CV-4666, 2012 WL 5438931, at *4 (E.D.N.Y. Nov. 2, 2012); *see also Sepulveda v. Harris*, No. 9:09-CV-1117, 2011 WL 2689357, at *4 (N.D.N.Y. July 11, 2011) ("Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain.") (internal quotations omitted).

To satisfy the subjective prong of the deliberate indifference standard, "the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (quoting *Hathaway*, 99 F. 3d at 553). The subjective prong of the deliberate indifference standard "is met where an 'official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Mastroianni v. Reilly*, 602 F. Supp. 2d 425, 433 (E.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. at 847, 114 S. Ct. at 1984); *see also Singh v. Fuller*, No. 93 Civ. 5937, 1999 WL 777872, at *2 (S.D.N.Y. Sept. 30, 1999) (holding that a claim for deliberate indifference requires that "the

officer intended to inflict pain on the inmate"). Moreover, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Wandell v. Koenigsmann*, No. 09 Civ. 8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000). Rather, "[i]n order to avoid dismissal, plaintiff must allege conduct that 'shocks the conscience.'" *Id.* (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)).

Plaintiff's allegations, accepted as true, are insufficient to state a claim arising under Section 1983 against the Physician Defendants. First, Plaintiff alleges that Dr. Laguio practiced medicine at the Ulster Correctional Facility, and that on December 27, 2013, Laguio "personally provided and supervised medical care to Decedent." Compl. ¶¶ 217-22. According to Plaintiff, although the Decedent informed Dr. Laguio that he had been diagnosed with scleroderma, "there was no record of the scleroderma diagnosis in the transfer summary," and Laguio therefore "directed the records from Nassau County Jail be obtained." *Id.* at ¶ 370. Although Armor sent a one hundred and twenty (120) page chart, it "chose not to send any pertinent medical records." *Id.* at ¶ 371. Rather, Armor "sent only the medication orders confirming the use of contraindicated medications from September through December and a single laboratory result from August." *Id.* According to Plaintiff, Armor's "choice to send only those eight sheets misinformed the subsequent medical and nonmedical personnel; it effectively continued the contraindicated medications and kept them in the dark about the correct diagnosis of scleroderma being made at NUMC." *Id.* These allegations are insufficient to support an inference that Dr. Laguio acted with deliberate indifference, as Plaintiff does not allege that Dr. Laguio was aware of and ignored the Decedent's serious medical condition. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[T]he deliberate indifference standard requires the plaintiff to prove that the prison official knew of and disregarded the plaintiff's serious medical needs."); *Rivera v. Goord*, 119 F. Supp. 2d 327,

338 (S.D.N.Y. 2000) (dismissing claims of deliberate indifferent to serious medical needs against defendants who "were never asked to provide any specific medical assistance"). To the contrary, Plaintiff concedes that Armor's failure to provide pertinent medical records kept Dr. Laguio and others "in the dark about the correct diagnoses of scleroderma . . . ." Compl. ¶ 371. Therefore, Plaintiff fails to state a claim arising under Section 1983 against Dr. Laguio.

Next, Plaintiff alleges that Dr. Makram practiced at Ulster Correctional Facility, and that, on December 27, 2013, "blood was drawn from Decedent while at the Ulster Correctional Facility," the results of which were sent to Makram. Compl. ¶¶ 223-26, 372. According to Plaintiff, "the record does not indicate that Defendant Makram acted on these results at all," but rather, "it appears they were filed and ignored." *Id.* However, as Plaintiff does not allege that the blood test results revealed a serious medical condition, or that Makram was aware of but failed to act in response to a serious medical condition, Plaintiff fails to state a claim arising under Section 1983 against Dr. Makram. *See Chance*, 143 F.3d at 703; *Rivera*, 119 F. Supp. 2d at 338.

With respect to Dr. Smith, Plaintiff alleges Dr. Smith was a physician at the Greene Correctional Facility who provided medical treatment to the Decedent on January 10, 2014, January 16, 2014, and February 21, 2014. Compl. ¶¶ 235-38. According to Plaintiff, on January 10, 2014, Dr. Smith "continued [a] prescription for the contraindicated Naprosyn with no evidence an examination occurred." *Id.* at ¶ 377. On January 16, 2014, Dr. Smith "noted some lab results, decreased range of motion of his jaw, swelling of his face, lower arms, lower legs and skin that had tightness with harden [*sic*] appearance and touch." *Id.* at ¶ 380. The following day, Dr. Smith, "for the first time, requested the records from Nassau University Medical Center." *Id.* On February 21, 2014, Dr. Smith "first reviewed [a] consult not and ordered the lab work [another doctor] asked for a week before." *Id.* at ¶ 383. These allegations, accepted as true, are insufficient

to state a claim arising under Section 1983 against Dr. Smith. First, to the extent Plaintiff alleges that Dr. Smith was deliberately indifferent as a result of continuing a contraindicated prescription, Plaintiff's own allegations demonstrate that Dr. Smith did not have the Decedent's medical records from the Nassau University Medical Center until *after* she continued the prescription for Naprosyn. As Dr. Smith was not aware of any contraindication at the time of the prescription, Plaintiff's allegations do not support an inference of deliberate indifference. *See Chance*, 143 F.3d at 703; *Rivera*, 119 F. Supp. 2d at 338. Furthermore, to the extent Plaintiff alleges that Dr. Smith was deliberately indifferent as a result of waiting a week to order lab work, Plaintiff fails to allege facts that support an inference that any such delay was the result of mere negligence, which is insufficient to state a claim arising under Section 1983. *See Salahuddin*, 467 F.3d at 280 (holding that deliberate indifference "entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent"). Therefore, Plaintiff's allegations are insufficient to state a claim arising under Section 1983 against Dr. Smith.

Finally, Plaintiff alleges that Dr. Miller was a physician at the Greene Correctional Facility, and that, on March 17, 2014, "over one month since it was requested by the rheumatology consultant, . . . blood was first drawn for laboratory analysis." Compl. ¶¶ 239-43, 385. According to Plaintiff, the results of the blood testing were sent to Dr. Miller, but there "is no indication that Defendant Miller reviewed or acted upon these results which indicated a positive ANA screen and titer findings consistent with scleroderma." *Id.* Plaintiff's allegations that Dr. Miller failed to review the blood test results support, at most, an inference of "negligent oversight, which does not rise to a level of deliberate indifference." *Bost v. Bockelmann*, No. 9:04-CV-246, 2007 WL 527320, at *11 (N.D.N.Y. Feb. 20, 2007). As Plaintiff's fails to allege that Dr. Miller was aware of a serious medical condition and failed to take appropriate action in response thereto, Plaintiff's

allegations do not support an inference that Dr. Miller acted with deliberate indifference. *See Chance*, 143 F.3d at 703; *Rivera*, 119 F. Supp. 2d at 338.

In her second objection to the Report, Plaintiff argues that the Report's "wholesale invalidation of the claims against the physician defendants for their failure to provide constitutionally adequate health and medical care and their failure to adequately hire, train and supervise medical and non-medical personnel should, respectfully, be rejected." Pl.'s Obj. at 4. According to Plaintiff, "[t]he complaint specifically details how Mr. Casiano's blatantly obvious condition was ignored, left untreated and/or mistreated by the physician defendants." *Id.* According to Plaintiff, "the indifference displayed by the physician defendants in their grossly inadequate care and treatment of the decedent's serious condition . . . necessarily constitutes a sufficiently culpable state of mind." *Id.* However, contrary to Plaintiff's argument, and as discussed above, where a health care provider is unaware of a serious medical condition, he or she will not be held liable under Section 1983. *See Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) ("In order to rise to the level of deliberate indifference, the defendant *must have known of* and disregarded an excessive risk to the inmate's health or safety.") (emphasis added); *see also Brown v. Picarelli*, No. 96 Civ. 1222, 2003 WL 1906180, at *9 (S.D.N.Y. Apr. 15, 2003) ("Because defendants were unaware of any danger to [the plaintiff] or the existence of any serious medical condition, there is no knowing violation of the law."). As Plaintiff fails to allege that the Physician Defendants had the requisite knowledge of a serious medical condition, Plaintiff's argument regarding the Physician Defendants lacks merit. Therefore, Plaintiff's objections regarding the Physician Defendants are overruled.

**B.  Remainder of the Report and Recommendation**

As discussed above, the Court must review those portions of a report and recommendation to which no objections have been filed for clear error. *See Frankel*, 2009 WL 465645, at *2. Having reviewed the remainder of Magistrate Judge Lindsay's Report for clear error, and having found none, the Court adopts Magistrate Judge Lindsay's August 8, 2017 Report and Recommendation in its entirety. Therefore, the State Defendants' motion to dismiss: (i) Plaintiff's claims is granted with leave to replead; and (ii) the County's cross-claims is denied with leave to renew.

**III.  CONCLUSION**

For the reasons set forth herein Magistrate Judge Lindsay's August 8, 2017 Report and Recommendation is adopted in its entirety and the State Defendants' motion to dismiss:  (i) Plaintiff's claims is granted with leave to replead; and (ii) the County's cross-claims is denied with leave to renew.  Plaintiff shall file her amended complaint on or before October 15, 2017.

Dated: Central Islip, New York
      September 30, 2017

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge